IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 19-94-RGA |
| | ) | |
| DONTE JACOBS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Defendant had a four-day trial. (D.I. 61-64). He has filed two post-trial motions. (D.I. 65, 69). The Government has responded. (D.I. 70).

Defendant essentially raises four issues. He argues that he should be granted judgment of acquittal on the conviction for conspiracy to possess with intent to distribute, and to distribute, heroin and fentanyl, causing death, because of a failure of proof. He argues that he should be granted judgment of acquittal on the conviction for distribution of heroin and fentanyl causing death because he did not distribute the heroin and fentanyl to the person who died. He argues that a new trial should be granted due to a *Batson* violation. He argues that a new trial should be granted due to an error in the way the elements of the offenses were presented to the jury.

Defendant's conspiracy argument is essentially that his coconspirator was not shown to be anything more than a purchaser of drugs from Defendant. Two people whose relationship to each other is merely that of a drug seller and a drug purchaser is insufficient to prove a conspiracy. The Court of Appeals has explained the relevant principles:

> It is well-settled that a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy. "[A] conspiracy requires an agreement to commit some other crime beyond the crime constituted by the agreement itself." We have endorsed that logic, concluding that if the only agreement is

for the seller to sell and the buyer to buy an amount of cocaine, no conspiracy exists. This precept follows as a matter of common sense as well as basic agency law.

However, we also reasoned . . . that "even an occasional supplier (and by implication an occasional buyer for redistribution) can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation." [T]his precept is the law of the circuit, by which this panel is bound. Often that knowledge is evidenced by the defendant's agreement to process cocaine into crack, or collect or launder drug proceeds. This case is made more difficult by the fact that there is no evidence that [the defendant] ever did anything to further the conspiracy other than buy and sell drugs. In cases where the defendant's only involvement in the conspiracy appears to be drug purchases, courts have looked to the surrounding circumstances to determine whether the defendant is a mere buyer who had such limited dealings with the conspiracy that he cannot be held to be a conspirator, or whether he has knowledge of the conspiracy to the extent that his drug purchases are circumstantial evidence of his intent to join that conspiracy.

Among the factors courts have considered in making that evaluation are: the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust. While these factors are not necessarily dispositive of the issue, their presence suggests that a defendant has full knowledge of, if not a stake in, a conspiracy: when a defendant drug buyer has repeated, familiar dealings with members of a conspiracy, that buyer probably comprehends fully the nature of the group with whom he is dealing, is more likely to depend heavily on the conspiracy as the sole source of his drugs, and is more likely to perform drug-related acts for conspiracy members in an effort to maintain his connection to them.

Courts also have examined whether the buyer's transactions involved large amounts of drugs. A large transaction or an accumulation of deals suggests more trust, garnered over a period of time, as well as a greater likelihood that the parties have "put their heads together" to figure out planning, organization, and ways to conceal their activities. Whether the buyer purchased his drugs on credit may also be relevant. A credit relationship may well reflect the kind of trust that is referenced *supra,* and often evidences the parties' mutual stake in each other's transactions. By extending credit to a buyer, the seller risks the possibility that the buyer will be unable to resell the drugs: even if the buyer does successfully resell the drugs, in this generally thinly capitalized "business," the seller will likely have to wait until the buyer collects the money from his resale before he can pay the seller back for the initial purchase. In addition, the buyer has a vested interest in the seller's ability to maintain a good working relationship with his supplier, since the buyer will not profit unless the drugs continue to flow from the seller's supplier to the seller.

Though no one of these factors alone will necessarily be sufficient—without more—to establish a mere buyer's agreement to join the conspiracy and his intent to achieve a common goal with that conspiracy, the presence of one or more of these factors furthers the inference that the buyer knew that he was part of a larger operation and hence can be held responsible as a co-conspirator.

*United States v. Gibbs*, 190 F.3d 188, 197–200 (3d Cir. 1999) (citations and some verbiage omitted). Defendant says a "buyer-seller" relationship between Defendant and the alleged coconspirator is all that the Government proved. (D.I. 65 at 3).[1] I disagree. As the Government sets forth (D.I. 70 at 3-4), among other things, the relationship of the two involved regular distributions of heroin over a three-month period, Defendant knew that Collins had his own customers to whom he was reselling the heroin, Collins increasingly purchased the heroin on credit from Defendant, Defendant wanted Collins to deliver heroin to a third-party on Defendant's behalf, and they contemplated obtaining a stash house together. This evidence was sufficient to support the jury's conclusion that Defendant and Collins were engaged in a conspiracy to distribute heroin and fentanyl.

Defendant's distribution argument is essentially that Defendant cannot be convicted of distribution causing death because there is no "conspiracy or aiding and abetting allegation," and the distribution crime ended when Defendant gave the drugs to his coconspirator. (D.I. 65 at 4). Defendant states that the distribution that caused the victim's death was not his distribution, but a later distribution by the coconspirator. Defendant also argues that there was no evidence of *mens rea*. I reject Defendant's arguments. In *Burrage v. United States*, the Supreme Court held that the two "principal elements" of the crime are "knowing or intentional distribution of [the relevant controlled substance]" and "death caused by ('resulting from') the use of that drug." 134 S. Ct. 881, 887 (2014). The Supreme Court decided that the second of the two elements required that (in the usual case) the distributed drugs be the "but-for" cause of death. *Id.* at 887-92. The jury was instructed that the Government had to prove that the fentanyl distributed by

---

[1] Defendant also argues at some length that he cannot be convicted of conspiracy causing death because his coconspirator was not charged with that crime, and that the charges against the coconspirator alleged criminal activity during a different time frame. (D.I. 65 at 2-3). This argument fails, as there is no requirement that a coconspirator be charged at all, let alone identically.

Defendant was the "but-for" cause of death. (*See* D.I. 46 at 41; D.I. 63 at 725). No instruction on "proximate cause" was required. *See United States v. O'Brien*, 738 F. App'x 38, 44 (3d Cir. 2018) (citing *United States v. Robinson*, 167 F.3d 824, 831 (3d Cir. 1999), for the proposition that "the controlled substance need not be the proximate cause of the victim's death"); *see also United States v. Lewis*, 895 F.3d 1004, 1010 (8th Cir. 2018) (rejecting argument that "redistribution" of the drug is an "intervening cause" of death for which the first distributor "cannot be held responsible," as, "Nothing in *Burrage* or the plain language of the statute limits responsibility to only the last person to distribute the drug before the harm occurs.").

Defendant argues that the prosecution committed a *Batson* violation. Defendant does not argue anything more than what he argued at trial. (*See* D.I. 61 at 211-27). That is, there was *prima facie* evidence of a *Batson* violation. The prosecution conceded as much. (*Id.* at 212). The prosecution struck five African-American jurors (jurors 54, 25, 11, 9, and 33), one of whom would have been an alternate, and the one Hispanic-surnamed juror (juror 26).[2] The prosecution explained why it struck each of the jurors in question, giving one or more race-neutral explanations for each. (*Id.* at 212-19). "Although the prosecutor must present a comprehensible reason, '[t]he second step of [the *Batson*] process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 338 (2006). The prosecution having satisfied its burden of offering race-neutral explanations, I gave Defendant an opportunity to rebut the prosecution's explanations. Defendant offered nothing of much substance other than the numbers. (*Id.* at 219-20). I credited the prosecution's race-neutral explanations for the strikes, and thus denied the *Batson* challenge. (*Id.* at 223:23-24). I evaluated the justifications offered by the prosecutor, *see*

---

[2] I did not resolve the issue raised by the Government about whether the Hispanic-surnamed juror was properly part of the *Batson* challenge. (D.I. 61 at 218).

*id.* at 222-25, and concluded that Defendant did not meet "his burden of proving purposeful discrimination."[3] *Rice v. Collins*, 546 U.S. at 338. Nothing in the post-trial motion causes me to reconsider that decision.

Defendant argues in his supplemental motion that there was error in relation to the verdict form. Defendant suggests, rather obliquely, that I should have used Defendant's verdict form. (D.I. 69 at 1). The Government responds that the issue was waived by not being raised timely in the first of Defendant's post-trial motions. (D.I. 70 at 7-8). Defendant's second post-trial motion was filed on December 4, 2019. The jury verdict was entered on September 12, 2019. (D.I. 48). That same day, I entered an order extending the time to file "post-verdict motions" to November 12, 2019. (D.I. 53). On November 8, 2019, the parties filed a consent motion extending the time to file an additional week, which I granted on November 14th, making any such motion due on November 19, 2019. (D.I. 59, 60). Defendant timely filed his first motion on November 18th. (D.I. 65). The supplemental (or second) motion was thus filed about two weeks too late. Defendant states that the second motion raises "additional argument relating to the legal impossibility for [Defendant] to be culpable of the element 'resulting in death' set forth in Count One and Two." (D.I. 69 at 1). To the extent the argument is about "legal impossibility," I think it is fair elaboration on the argument made in the first motion. The merits

---

[3] Jurors 54 and 33 both gave answers that reasonably caused the prosecution to be concerned with whether the jurors would treat the prosecution fairly. (D.I. 61 at 222). Juror 25 had a problematic cough that risked slowing down the trial. (*Id.* at 224). Juror 11 seemed to have too much exposure to drug use and to work in a "forgiving" profession. (*Id.* at 215-16, 224:15-23). Juror 9 was sleeping. (*Id.* at 224). Juror 26 was a statistician who had an opinion that might make it difficult for him to be a fair and impartial juror, in that he thought that "the numbers" said the criminal justice system was biased, and the prosecution was concerned that he might hold the prosecution to a higher standard. (*Id.* at 122-23, 217-18).

of that argument are addressed above. To the extent the argument is about the form of the verdict, it is a new argument, and it is too late.[4]

Thus, for the above reasons, the Court denies the motions for judgment of acquittal and for a new trial. (D.I. 65, 69).

                                                           */s/ Richard G. Andrews*
                                                         United States District Judge

                                                         1/3/20

---

[4] The verdict form followed the form suggested in the Third Circuit Model Criminal Jury Instruction 6.21.841C, page 30. I am aware that the model instructions are not authoritative. *See Robinson v. First State Community Action Agency*, 920 F.3d 182, 189-90 (3d Cir. 2019).